# Commonwealth ex rel. Davis *against* Lecky.

The supreme court will not discharge a prisoner from a commitment upon a *capias ad satisfaciendum* issued out of the court of common pleas.

THE relater, *Thomas B. Davis*, being brought before the court on *habeas corpus*, objected to the legality of his arrest on a *capias ad satisfaciendum*, returned for the cause of his detention, that it was made after the execution had been superseded by a writ of error. The respondent, who was the sheriff of Alleghany county, testified that Mr *Davis* came into his office, and that the execution was put into his hands in order to know what arrangement he intended to make in respect to it, but without touching his person with a view to a formal arrest; on which he went away, but shortly returned and gave notice that a writ of error had been taken and bail given; notwithstanding which he was taken into custody. On hearing this, the court suggested a doubt whether the *habeas corpus* were the proper remedy, taking for granted, what was by no means clear, that the execution of the process was irregular; and desired the matter to be spoken to.

*Watts*, for the relater.

The habeas corpus act of 1785 extends to commitments on civil process. In *Hecker* v. *Jarrett*, 3 *Binn.* 404, it was admitted that a judge in vacation may discharge from an arrest on civil process; though it must be conceded, the cause was ultimately decided on the ground that the discharge was void for want of notice to the other party. If a single judge may discharge, why may not the supreme tribunal of the state? In the *Commonwealth* v. *Hambright*, 4 *Serg. & Rawle* 149, it was determined that where the court which issues the process has refused to discharge on a claim of privilege, the supreme court is not bound to interfere; but there was no intimation of a difficulty on the ground that the prisoner was in custody on the process of another court. On the contrary, interference was declined expressly because the common pleas had already determined the right. *Respublica* v. *Goaler*, 2 *Yeates* 349, was the case of an arrest on mesne process; and to be sure the court from which it issued was the proper one to say whether the defendant should be delivered on common bail. That is a very different case; and so is that of the *Commonwealth* v. *Hambright*, which depended on the discretion of the court, and in that respect resembled *Ex parte Lawrence*, 5 *Binn.* 304, in which it was decided that the court is not *bound* to grant a *habeas corpus* where the matter has been already heard on

[Commonwealth ex rel. Davis v. Lecky.]

the same evidence by another court. But the *habeas corpus* is a great constitutional remedy; and unless it be held to extend to every case of illegal confinement, without regard to the character of the process, it will not have the enlarged and beneficial operation which the legislature, as well as the framers of the constitution intended.

*Fetterman,* for the respondent, was stopped by the court.

The opinion of the Court was delivered by

GIBSON, C. J.—The *habeas corpus* is undoubtedly an immediate remedy for every illegal imprisonment. But no imprisonment is illegal where the process is a justification of the officer; and process, whether by writ or warrant, is legal wherever it is not defective in the frame of it, and has issued in the ordinary course of justice from a court or magistrate having jurisdiction of the subject matter, though there have been error or irregularity in the proceedings previous to the issuing of it. *Mackalley's Case,* 9 *Co.* 68 *a*; 1 *Hale's P. C.* 488. In *Cable* v. *Cooper,* 16 *Johns.* 155, it was accurately said by the judge who delivered the opinion of the court, that whether the judgment or execution be voidable, is a point which the sheriff is never permitted to raise; and that having arrested the party, he is bound to keep him till he is discharged by due course of law. To the same effect is *Cameron* v. *Lightfoot,* 2 *Bl. Rep.* 1190, and 2 *Saund.* 101 *y*, note 2, where the authorities are collected. If, then, the officer can not allege error in the process, how can the prisoner do so consistently with the common law principle, that the proceedings of a court of competent jurisdiction are not to be reversed or set aside by a collateral proceeding, where redress may be had by appeal, writ of error, or any other direct means of review? That this principle is applicable in all its force to the *habeas corpus,* is sustained by an abundance of authority. In *Barnes's Case,* 2 *Roll. Rep.* 157, a return that the prisoner had been committed in execution by the court of admiralty to the warden of the cinque ports till he should restore an anchor carried away by him, or pay the warden forty pounds, was held sufficient, though the proceedings were irregular. So in *Bethel's Case,* 1 *Salk.* 348, it was held that if a commitment in execution be wrong in form only, the defendant may be discharged on *habeas corpus,* but is to be put to his writ of error. *S. C.* 5 *Mod.* 19. And *The King* v. *Elwell,* 2 *Stra.* 79, is a still more signal instance. On motion to discharge the prisoner on exceptions to the commitment, which was a conviction of forcible entry and detainer, the king's bench refused to enter into any consideration of them till the commitment were regularly before them; and the proceedings having been removed by *certiorari* into that court at a subsequent term, were first quashed, and the prisoner, who had been bailed in the mean time, was then discharged.(*a*) The same principle seems to

(*a*) See also *Ex parte Gill,* 7 *East* 376, where, on a *habeas corpus* for an apprentice committed to the house of correction on a conviction by two magistrates, the court

have been recognized by our own court in *Respublica* v. *Goaler*, 2 *Yeates* 349, where it was determined that the supreme court can not discharge a party arrested on process from the common pleas; and in the *Commonwealth* v. *Hambright*, 4 *Serg. & Rawle* 149, we refused to consider objections to an arrest upon similar process, urged on the ground of privilege.    It must be admitted that the reasons on which the court proceeded in these two cases are not very fully unfolded; but the decisions are entirely consistent with the rule as I have stated it, and I know of none else on which they can be sustained.    They may, I presume, be considered as in point; for that the arrest was on mesne instead of final process, can scarce be thought a material difference.    *Hecker* v. *Jarrett*, 3 *Binn.* 409, which is supposed to bear the other way, was distinctly decided on another ground; and though the power to discharge from an execution seems to have been recognized by the chief justice, there is no reason to think he had in view an execution merely voidable.    Of the power to discharge from a void execution no one ever doubted; and his remark is in fairness applicable to no other.    There are, I believe, few decisions on the point in our sister states.    In New York it seems to be doubted whether their *habeas corpus* act extends to arrests on civil process; and their judges have for that reason, as well as on general principles, refused to discharge in some instances on exceptions to its regularity; as in *Cable* v. *Cooper* already cited.    But in the *Bank of the United States* v. *Jenkins*, 18 *Johns.* 308, though it was held that the *habeas corpus* act did not extend to the supreme court in term time, yet no doubt was entertained of the common law power of the court to relieve from all illegal imprisonments, whether in civil or in criminal cases; and it was expressly determined that a *habeas corpus* is not the remedy for a defendant imprisoned on a *capias ad satisfaciendum* which has issued irregularly, the proper course being an application to the court from which it has issued.    After this explicit recognition of the principle in a case exactly like the one before us, it is scarce necessary to refer to *Yates's Case*, 4 *Johns.* 318, in which it was determined that the supreme court of that state can not discharge from a commitment by the chancellor for a contempt.    Any other rule would present some very curious judicial phenomena. By an inversion of their functions, a single judge in vacation, and of perhaps an inferior court, would be legally competent to rejudge the judgments of the highest tribunal in the land; and the supreme court of the state, instead of proceeding systematically in the correction of errors, would be called upon to produce its results by a new and shorter process, while in the guise of writs of *habeas corpus*, it would be flooded with appeals from the decisions of the other courts on questions of bail.    The rule is therefore absolutely necessary to prevent judicial proceedings from running into a state of incurable disorder; and an application of it to the relater's case, is fatal to his

refused to consider circumstances laid before them by *affidavit*, which might have been made matter of defence before the magistrates. ·

[Commonwealth ex rel. Davis v. Lecky.]

claim to relief in this particular way.   Every court is the proper tribunal to judge of the regularity or abuse of its process; and the remedy for the alleged irregularity here, is an application to the court from which the process issued.

The relater was remanded.

